## INJUNCTIVE RELIEF AGAINST VIBRATIONS.

Superior Court of Cincinnati.

ROSE BELL ET AL v. POLLAK STEEL COMPANY.

Decided, March Term, 1917.

*Injunction—Does Not Lie Against a Manufacturing Plant on Account of Vibration, When—Degree of Proof Required—Res Adjudicata.*

1. Injunction will not lie against the operation of a steel manufacturing plant on the ground of injury to residence property from vibration, where it appears that the plant is located in a manufacturing and railroad district and is separated from the residences in question by a stream of water and a railway system operating sixty or more trains per day, said trains causing as much and at times more vibration than said steel manufacturing plant operation.
2. The doctrine of *res adjudicata* applies in cases where injunctive relief is sought against "vibrations" suffered by owners of property, unless the vibrations are greater than those complained of in former litigation involving the same issues and between the same parties.
3. Injunctive relief will not be granted unless the proof is clear and convincing, tending to show irreparable damage for which no adequate relief can be had at law.

*Schmuck & Jacobs*, for plaintiffs.
*Stricker & Johnson*, contra.

GUSWEILER, J.

The plaintiffs own their own homes and all reside on Rosewood avenue, Cincinnati, some 400 feet east of the defendant company's manufacturing plant. The C., H. & D. Railway tracks parallel plaintiffs' property within a very few feet, upon which said railway company is operating daily some sixty or more trains. Millcreek and the said railway tracks lie between plaintiffs' property and defendant company's plant.

The complaint of plaintiffs in this action is that in the operation of defendant's steel manufacturing plant it uses certain "helve hammers" and certain "large drop hammers" from the use of which plaintiffs suffer in their sleep, etc., from vibration, which also materially damages plaintiffs' houses, all to their irreparable injury, for which they pray for injunction.

The steel company, by way of defense, among other things, contends that it is doing precisely the same character of work it has done for many years past, using the same hammers and in the same manner; that plaintiff, on June 19, 1916, filed a suit in the Court of Common Pleas of Hamilton County, in which the same injunctive relief was sought as prayed for in the instant case; that the trial court after full hearing in said action declined to issue an injunction, *ante*, which finding and order was affirmed by the court of appeals on November 23, 1916; that on the same day the defendant company paid to the plaintiffs a substantial sum of money, for which the defendant received a general release in said cause of action. After so releasing the defendant company, to-wit, December 29, 1916, the plaintiffs filed the present suit, setting up the identical complaint set out in the former suit. The defendant company contends that all this is *res adjudicata*, unless plaintiffs can show greater vibrations and different conditions, operations and results from the conduct of defendant company's plant than existed on November 23, 1916; that is, that the trial court and court of appeals having finally determined that no nuisance condition or plant operation condition warranted injunction at that time, that no such injunctive order can follow now if everything as to operation and conduct at present is the same. Further, the defendant steel company denies that it is wrongfully conducting its

business and plant operation to the irreparable damage of plaintiffs.

By reply the plaintiffs contend that the point of *res adjudicata* raised by defendant company is without merit as to vibration occurring subsequent to said court finding and mutual settlement, and also allege that the vibrations are greater since said date than prior thereto.

The court has listened to many witnesses and has heard much evidence on the points in controversy, and has visited the plant of defendant steel company in operation as well as the plaintiffs' premises. Plaintiffs' premises were visited by the court during the trial in January and also February 22, 1916, and March 20, 1916, with and without counsel present. Whether the court approves or disagrees with the contention on the theory of *res adjudicata* applying in this case, it is settled law that the chancellor must be convinced by clear and convincing proof that there is no adequate remedy at law and that the case justifies injunctive relief before plaintiffs can prevail (33 O. S., 371). Is this a case under all the circumstances where, by such proof, irreparable damage is being done to plaintiffs? Damages to the premises of plaintiffs, if ascertainable in money damages, can be recovered in an action at law, but can not be relieved against in equity (5 N. P., 203). We are of the opinion that in this case irreparable damage and injury must flow and be inflicted upon plaintiffs, aside from property damages, for which they have no adequate relief at law.

After careful consideration and investigation we are of the opinion that the property of plaintiffs is being vibrated by defendant company's plant in a perceptible manner; the chandeliers, gas fixtures, looking glass, bed, windows, etc., are affected. We also notice this condition when the railway trains pass, at times indicating a greater degree of vibration than from defendant's plant. But is the condition and effect such as to be irreparable in damage under all the circumstances in this case, having in mind the character and location of the premises, etc., and without considering the question of *res adjudicata*?

Here we have a case where from the evidence it is proven that the defendant company has been engaged in the Millcreek val-

ley, a part of Cincinnati, for the past twenty years, in the operation of a forge and shape shop in the manufacture of locomotive driving axles hammered from billets and ingots, car axles, tender, truck and trailing shafts and heavy steel products, etc., with large invested capital, employing nearly 1,500 men, at an annual wage of nearly one million and one-half dollars, the plant covering an area of some twenty acres, extending one mile east and west, and being one of Cincinnati's largest manufacturing industries, and that the said business is conducted in a modern, up-to-date manner. On the other hand, we find that the operation of said plant does actually vibrate plaintiffs' premises. In determining the rights of plaintiffs and defendant company we are bound to consider these various situations. Simply because defendant represents one of Cincinnati's greatest manufacturing industries will not of itself conclude plaintiffs in their rights. In order to determine their legal rights and the violation thereof, we must consider the location of plaintiffs' premises in the Millcreek valley in a manufacturing, factory district, surrounded by many other manufacturing plants and concerns, and that plaintiffs' houses are located within a few feet of the C., H. & D. Railway tracks where sixty or more trains are operated daily. All these matters are proper for the chancellor to consider in order to determine by clear and convincing proof whether plaintiffs have suffered and are suffering irreparable damages (Wood on Nuisances, 638-39; 5 N. P., 359).

We are satisfied that plaintiffs' premises are located in what is known in law as a manufacturing and railway district. There is no evidence indicating that defendant company's plant is being operated in an improper manner or can be operated under different or more modern methods by which the vibration complained of could be obviated.

The court has held (7 N. P., 254) that the deprivation which plaintiffs suffer of natural rest at night is an interference with their rights for which they are entitled to a remedy; the same principle being also found in 8 N. P., 398; 19 N. P., 70. While it has been held (13 C.C.[N.S.],335) that heavy hammers and machinery operated in a manufacturing district can not be enjoined where no substantial vibration is produced, nevertheless

we are not ready to say that because defendant's plant is located in a manufacturing district defendant is at liberty, without limitation, unreasonably and substantially to vibrate plaintiffs' premises. Even though plaintiffs' premises are located in a factory or manufacturing district they have legal rights which a court of equity will protect. But plaintiffs, under the present state of circumstances, in law are bound to submit to certain handicaps to their property rights by virtue of such location, which they would not if they were located in a residential district (15 C. C., 228). Persons dwelling in the vicinity of shops, factories, etc., can not in law have the same quiet and freedom from annoyance that they would have in different or other districts (68 O. S., 51; 1 Ch., 234 [1906]; 15 N.P.[N.S.], 1). In that case the court of appeals refused an injunction.

We find also from the testimony in the case at bar that in the operation of the numerous trains over the C., H. & D. tracks in this vicinity much vibration is caused, and at times very perceptible and great, so much so, that while the Union Gas & Electric Company was recently placing its utility conveniences in the trench on Carthage pike, which is parallel on the east and perhaps twice as far from defendant company's plant as plaintiffs' premises, the soil on the edge of the trench at the surface level was shaken back into the trench when the trains passed by, which did not occur while defendant's plant was in operation when the trains were not passing. The character and volume of defendant's business must be considered. It is a legitimate business and must, of course, be located along the line of a railroad for freight shipping and in the vicinity where its 1,500 or more employees live. The only place where such a business can be successfully and perhaps properly conducted is away from the most thickly populated districts, in a manufacturing locality, dedicated to the march of trade as conducted in progressive America, located where it is naturally to be presumed factories will locate in the progress and growth of the city, and on the line of a trunk railway, where the numerous and necessary supplies of coal and raw material can be expeditiously and properly handled and the volume of manufactured goods of defendant company can be expeditiously and properly shipped.

Millcreek valley at this point, in our judgment, is a manufacturing district and adapted to great manufacturing industries. Where else or to what other kind of location shall we say that this plant shall go? Can it be said that it shall be removed to the open land, apart and distant from any railway conveniences and convenient homes for its employees?

The case at bar has been skillfully and earnestly tried by the learned counsel on both sides. After careful and serious consideration of the law, in summing up the evidence as given by all the witnesses, considering the observations as to the conditions and effect of the vibration on the premises of the plaintiffs on the three visits made in person by the trial court; when we consider that there are perceptible vibrations affecting plaintiffs' premises due to the operation of defendant company's plant, as well as from the railway trains passing; when we consider the location of plaintiffs' premises within a very few feet of the C., H. & D. Railway; that this railroad and Millcreek lie between plaintiffs' premises and defendant's plant; and considering the extent of the acreage, territory, the character and volume of defendant's business, the number of employees it carries on its pay-roll and all other points so ably presented by counsel, and the evidence in this case, we have come to the following conclusions, to-wit:

1.   That plaintiffs' premises are located and situated in a manufacturing, railroad, business district.

2.   That the doctrine of *res adjudicata* applies in the case at bar.

3.   That we are not convinced by clear and convincing proof that greater vibrations have occurred since November 23, 1916, nor do we believe that the fair preponderance of the evidence so proves.

4.   That even if the doctrine of *res adjudicata* did not apply, there has not been sufficient proof in the instant case of a clear and convincing nature to establish the conclusion, in the opinion of the court, that irreparable injuries are being sustained by plaintiffs warranting injunctive relief.

5.   That under the rulings laid down by the various authorities previously cited and especially under the ruling of our

court of appeals in the case of *Gau et al* v. *Ley et al*, 27 C.C. (N.S.), 1; and considering the general rule in Ohio as announced in *Goodal* v. *Crofton*, 33 O. S., 271, and *Eller* v. *Koehler*, 68 O. S., 51, the prayer of the petition will be disallowed, the injunction denied, and the petition of the plaintiffs dismissed at their costs.